UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PERFECT 10, INC.<br>3455 Kearny Villa Road, # 427<br>San Diego, CA 92123<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IWEB GROUP, INC., a Canadian<br>company d/b/a iWeb.com,<br>20 Place Du Commerce<br>Montreal, Quebec H3E1Z6<br>CANADA<br><br>IWEB INTELLECTUAL<br>PROPERTY INC., a Canadian company<br>d/b/a iWeb.com,<br>20 Place Du Commerce<br>Montreal, Quebec H3E1Z6<br>CANADA<br><br>Registered to do business in Washington,<br>DC, with a registered agent at<br>1850 M Street, NW, Suite 280,<br>Washington, DC 20036<br><br>IWEB TECHNOLOGIES, INC., a<br>Canadian company d/b/a iWeb.com,<br>20 Place Du Commerce<br>Montreal, Quebec H3E1Z6<br>CANADA<br><br>and DOES 1 through 100,<br><br>　　　　　Defendants. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT** |

Plaintiff Perfect 10, Inc. ("Perfect 10") avers as follows:

## NATURE OF THE CASE

1.　　This is an action for copyright infringement arising out of the knowing and willful

actions of Defendants, IWeb Group, Inc., IWeb Intellectual Property, Inc. and IWeb Technologies, Inc., (the "iWeb Defendants") three affiliated companies who appear to be alter egos and agents of one another and inextricably intertwined, that do business under the name "iweb.com" and host infringements of Plaintiff's copyrighted material on the Internet, and other entities that own or control or act in concert with these entities but whose names are unknown. The iWeb Defendants have a Washington, DC business address which is listed on the iweb.com web site as their United States presence. One of the iWeb Defendants is registered to do business in Washington, DC and maintains a registered agent in Washington, DC. The iWeb Defendants and the Doe Defendants are referred to collectively as "the Defendants."

2.  The theft of copyrighted material on the Internet has reached epidemic proportions. Plaintiff, Perfect 10, originally published the popular magazine PERFECT 10 which began as an adult magazine that featured only tasteful images of natural models. Perfect 10 currently owns and operates the internet website located at <perfect10.com>. Perfect 10 invested significant resources into producing high quality products, with tasteful images of models, along with articles written by models themselves, and received substantial attention for its unique format. Perfect 10 owns thousands of valuable and unique copyrighted photographs. Exhibit A to this Complaint, which is incorporated by reference, provides a partial list of Perfect 10's Copyright Registrations. In short, Perfect 10's business and livelihood is based upon the copyrighted images that it owns and sells access to. However, the images that Perfect 10 has spent so much money to create have been copied without permission from both Perfect 10's website and its magazine and now appear for free all over the Internet. As a result, Perfect 10 had to end the publication of its prized magazine in 2007. Its revenues have declined from $2 million a year in 2002 to roughly $70,000 a year today. Based on statements made by infringing websites regarding the number of views of Perfect 10 images on those websites, individuals have chosen to view tens of millions of Perfect 10 images for free, rather than pay to view them on <perfect10.com>. Perfect 10 has lost more than $50 million over a sixteen year period and is struggling to retain its few remaining employees.

3. Because the number of websites offering infringing images of Perfect 10's copyrighted images is staggering, Perfect 10 lacks the resources to sue each individual infringing website. Such an action would also place a burden on court resources. Filing lawsuits against individual infringing websites is also typically pointless because they are often judgment proof for any of a number of reasons – for example, the website operator may be located in a foreign country in which there is no effective legal redress, such as Russia, or the website operator may be a fly-by-night corporation. Many infringing websites also use identity concealing services to hide the identity of their operators. In an attempt to protect its copyrights, Perfect 10 has spent substantial time and resources issuing large numbers of "Digital Millennium Copyright Act ("DMCA") Notices" to the companies that host infringing material for websites, or in some cases to the website operators themselves, asking them to remove the infringing material. A DMCA Notice is a statutorily prescribed vehicle under the United States Copyright Act, 17 USC § 512 *et seq*. Perfect 10 has issued 73 DMCA Notices to Defendants over a two and a half year period, ranging from March 22, 2010 through November 2, 2012, identifying at least 50,000 infringing Perfect 10 images that Defendants continue to host on their servers and asking them to remove the infringing images. Not only do Defendants apparently have no Designated Agent to receive these DMCA Notices, and therefore do not qualify for any safe harbor limitation of liability pursuant to § 512 of the Copyright Act, but, upon receiving these notices, they have refused to remove the infringing material, despite having actual knowledge of the rampant infringement that they are hosting. Apparently Defendants calculated that the revenues received from hosting infringing materials outweigh the risk of infringing copyrights. Defendants are therefore knowingly and willfully committing copyright infringement themselves.

4. Defendants' conduct has caused Perfect 10 grave and irreparable harm.

**JURISDICTION AND VENUE**

5. This is a civil action for damages and injunctive relief for copyright infringement that arises under the Copyright Act, 17 U.S.C. § 101 *et seq*.

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over the Defendants because they have purposefully availed themselves of the privilege of doing business in the United States and in particular, in Washington, DC and material elements of Defendants' wrongdoing occurred in the District of Columbia.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(1) and (3), (c), and § 1400(a) in that a substantial part of the acts complained of herein occurred in the District of Columbia, one of the iWeb Defendants is registered to do business in the District of Columbia and Defendants are in fact doing business in the District of Columbia, and, on information and belief, the iWeb Defendants are foreign corporations and thus can be sued in any district.

9. The iWeb Defendants appear to be inextricably intertwined alter egos and agents of one another who share a unity of interest and ownership, as well as a Washington DC business address. According to domain registry records, the domain name <iweb.com> is owned by Martin LeClair with a listed address at Defendant iWeb Technologies, Inc. Moreover, Mr. LeClair appears to own a large number of domain names involving the term "iweb," many of which are forwarded to iweb.com. Martin LeClair is, or has been, President of Products and Technology for Defendant iWeb Group, Inc. Mr. LeClair has also been listed as a Director of Defendant iWeb Group, Inc. as well as a Director for Defendant iWeb Intellectual Property, Inc. Mr. Eric Chouinard either is, or has been, both CEO of and a Director of Defendant iWeb Group, Inc. and a Director of Defendant iWeb Intellectual Property, Inc. Canadian Corporate records list Defendant iWeb Group, Inc. as a majority owner of Defendant iWeb Intellectual Property, Inc and list Éric Chouinard as President of iWeb Intellectual Property, Inc. and Martin LeClair as Vice President and Secretary of iWeb Intellectual Property, Inc. Although the domain name <iweb.com> is registered to Mr. LeClair with a listed address Defendant iWeb Technologies, Inc., in what appears to be a press release issued by Defendants iWeb Group, Inc., iWeb Group, Inc. claims the "iweb.com" web site to be iWeb Group, Inc's web site. iWeb Group, Inc. also

claims to own the website <iweb8.com> which "points" back to <iweb.com>. However, the domain name <iweb8.com> is registered to "Martin iweb" with the technical contact being Martin LeClair. This same press release, however, in which iWeb Group, Inc. claims to own the website <iweb.com>, refers readers to a specific individual at iWeb Technologies, Inc. for further information. The <iweb.com> web site lists a Washington, DC business address for <iweb.com> at 1850 M Street, NW, Suite 280, Washington, DC 20036. Defendant iWeb Intellectual Property, Inc. is registered to do business in Washington, DC and appears to have been since January 2008. Defendant iWeb Intellectual Property Inc. maintains a registered agent at the same address, 1850 M Street, NW, Washington, DC 20036. Moreover, according to the <iweb.com> web site, Defendants have one or more agreements with Cogent Communications, an internet service provider headquartered in the District of Columbia, to provide the iWeb Defendants and the websites they host with network access and Cogent does indeed provide connectivity for multiple servers owned by the iWeb Defendants. Defendants also have agreements with other U.S. companies such as Level 3 Communications, that are directly related to the infringement at issue because those companies provide Internet bandwidth to Defendants which enables the distribution of infringing images. Defendant iWeb Group, Inc. has availed itself of the U.S. intellectual property laws by filing multiple United States trademark applications for various federal trademark registrations over a span of years including for the mark "IWEB" in 2004 and by its continued communications with the U.S. Patent and Trademark Office, most recently in July 2012. The iWeb Defendants have advertised their services to U.S. citizens and throughout the United States, and host and provide internet connectivity and other essential services to thousands of websites, many of which are owned by U.S. citizens, and a number of which have infringed Perfect 10 copyrights. In addition, on information and belief, Defendants have entered into reseller agreements with U.S. companies that offer hosting services, using iWeb as the actual web host. Further, the Defendants were aware, or should have been aware, that their conduct would cause injury in the District of Columbia. In short, Defendants appear to be inextricably intertwined, to share a unity of interest and ownership and

to be alter egos and agents of one another and therefore all subject to the jurisdiction of this court.

## AVERMENTS

### Plaintiff and Plaintiff's Copyrighted Images

10. Plaintiff, Perfect 10, Inc., is a California corporation with offices in San Diego, California. Perfect 10 published the popular magazine PERFECT 10 and owns and operates the internet website located at <perfect10.com>, a domain name owned by Perfect 10.

11. The business of Perfect 10 consists of the design, creation, production, marketing, promotion, and sale of copyrighted adult entertainment products, including photographs, magazines, video productions, cell phone downloads, and other media.

12. Perfect 10 was the publisher of the well-known magazine PERFECT 10, but was forced to close that magazine because of rampant infringement.

13. Perfect 10 creates or created, and sells or sold, calendars and other merchandise featuring its images, and was involved in the licensing of downloads of images for cellphones, but is not currently earning revenue from that endeavor because of rampant infringement.

14. Perfect 10 owns and operates the internet website <perfect10.com>. Consumers are provided access to content owned by Perfect 10 and made available by payment of a membership fee of $25.50 per month.

15. Perfect 10's revenues are currently derived predominantly from sales of memberships to its <perfect10.com> website. Sales of memberships to the <perfect10.com> website are made by providing the customer with an individual user name and password to access the website.

16. Perfect 10 owns thousands of valuable and unique copyrighted photographs, as well as video productions and other proprietary materials. Perfect 10 owns the copyrights in and to these works (the "Perfect 10 Copyrighted Works"). Perfect 10 has applied for and/or received Certificates of Copyright Registration from the Register of Copyrights for the Perfect 10

Copyrighted Works. Perfect 10 has the exclusive right, among other things, to reproduce the copyrighted works, to distribute copies of these works, to display copies of these works and to authorize or license any such activities. 17 U.S.C. §§ 106.

17.   Perfect 10 has invested, and continues to invest, substantial sums of money, time, effort, and creative talent, to make and produce the Perfect 10 Copyrighted Works. In addition, in order to produce and sell the Perfect 10 Copyrighted Works, Perfect 10 is required to make numerous payments, including but not limited to model fees, photographer fees, location costs, styling costs, make up costs, printing costs, film and processing costs, travel costs, as well as distribution, public relations, legal, and advertising and promotion costs. Defendants have been and are currently knowingly and willfully infringing Perfect 10's copyrights—the copyrights that Perfect 10 has made substantial investment to create with the intent to market. A partial list of Perfect 10 copyright registrations is attached as Exhibit A.

## Defendants And Defendants' Infringing Conduct

18.   Defendants IWeb Group, Inc., IWeb Intellectual Property, Inc., and IWeb Technologies, Inc. are Canadian companies registered under the laws of Canada that, on information and belief, do business as iweb.com and own and operate the Internet website located at iweb.com.

19.   Defendants Does 1-100 are individuals or entities that own and/or control the iWeb Defendants, or that are owned and/or controlled by the iWeb Defendants, and/or are conspiring with them, to engage in the unlawful activities described in this complaint.

20.   Defendants host and provide internet connectivity and other essential services to websites, including infringing websites that have infringed tens of thousands of Perfect 10 copyrighted works. Defendants claim to provide services to more than 21,000 customers in 150 countries.

21.   Does 1 through 100, inclusive, which are the individuals or entities that own or control the iWeb Defendants or entities that are owned or controlled by the iWeb Defendants

and which either directly or indirectly profit from and/or directly or indirectly infringe or facilitate the infringement of Perfect 10's copyrights, and/or are acting in concert with or conspiring with the iWeb Defendants to engage in the unlawful activities described in this complaint, are sued herein under fictitious names because their true names and capacities are unknown to Perfect 10. When Perfect 10 ascertains the Doe Defendants' true names and capacities, it will seek leave to amend this complaint to insert such true names and capacities. Perfect 10 is informed and believes, and on that basis avers, that each Doe defendant acted with the iWeb Defendants and is responsible for the harm and damages to Perfect 10 herein averred.

22.     Perfect 10 is informed and believes, and on that basis avers, that at all times material herein, each of the Defendants was the principal, agent and/or employee of the other Defendants, and, in doing the things herein averred, was acting within the course and scope of such agency relationship.

23.     Defendants hosts thousands of websites, including some of the largest infringing websites in the world, such as <altbinaries.com> and <imagevenue.com>, among others. A number of websites hosted by Defendants that have infringed Perfect 10 copyrights are owned or operated by individuals in the U.S.

24.     Defendants have actual knowledge that they are storing and displaying specific Perfect 10 Copyrighted Works. Perfect 10 has provided Defendants at least 73 Digital Millennium Copyright Act ("DMCA") notices, over the course of a two and a half year span, which have identified at least 50,000 infringing images that Defendants are making available for viewing and copying, to millions of users. Many of the Perfect 10 Copyrighted Works hosted by Defendants clearly display Perfect 10's copyright notice.

25.     Defendants, who have been hosting the infringing material, could have and should have ended the infringement by, among other things, either simply processing Perfect 10's DMCA notices and removing the infringing images or by refusing to host the identified allegedly infringing websites. However, Defendants have refused to do so. Defendants are not eligible for any safe harbor under Section 512 of the Digital Millennium Copyright Act ("DMCA") because

they have not provided any information about any DMCA agent on the iWeb Defendants' website or registered any DMCA agent with the U.S. Copyright Office. Moreover, Defendants have failed to remove the infringing material that Perfect 10 has identified in its multiple notices. Defendants conduct continues to threaten Perfect 10 with severe and irreparable harm. Defendants, moreover, are liable to Perfect 10 for the extensive damages and injury Defendants have already caused.

## COUNT I

## COPYRIGHT INFRINGEMENT

26. Perfect 10 incorporates herein by reference each and every averment of paragraphs 1 through 25 above as though fully set forth herein.

27. Perfect 10 is the owner of all right, title, and interest to each of the Perfect 10 Copyrighted Works. Perfect 10 has registered its works with the United States Copyright Office. Perfect 10 has been issued United States copyright registrations listed on Exhibit A, attached hereto, as well as many others.

28. Each of the Perfect 10 Copyrighted Works is copyrightable subject matter.

29. Defendants have copied, reproduced, distributed, adapted, and/or publicly displayed the Perfect 10 Copyrighted Works without the consent or authority of Perfect 10, thereby directly infringing Perfect 10's copyrights.

30. Defendants' conduct constitutes direct infringement of Perfect 10's copyrights and exclusive rights under copyright in the Perfect 10 Copyrighted Works in violation of the United States Copyright Act, 17 U.S.C. §§ 106 and 501.

31. Defendants have induced, caused, and/or materially contributed to unauthorized reproduction, adaptation, public display, and/or distribution of the Perfect 10 Copyrighted Works by allowing the infringement of such works to continue on their servers.

32. Defendants have had knowledge that they host websites which directly infringe Perfect 10's Copyrighted Works. Nevertheless, Defendants have refused to remove the

infringing images or withdraw their hosting services to such websites

33. Defendants have no DMCA designated agent under 17 U.S.C. § 512.

34. Defendants' conduct constitutes contributory infringement of Perfect 10's copyrights and exclusive rights under copyright in the Perfect 10 Copyrighted Works in violation of 17 U.S.C. §§ 106 and 501.

35. The infringement of Perfect 10's rights in and to each of the Perfect 10 Copyrighted Works constitutes a separate and distinct act of infringement.

36. The acts of infringement by Defendants have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of Perfect 10.

37. As a direct and proximate result of the infringements by Defendants of Perfect 10's copyrights and exclusive rights under copyright in the Perfect 10 Copyrighted Works, Perfect 10 is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

38. Alternatively, Perfect 10 is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

39. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause, Perfect 10 great and irreparable injury that cannot fully be compensated in money. Perfect 10 has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Perfect 10 is entitled to injunctive relief prohibiting further infringements of Perfect 10's copyrights.

40. Perfect 10 further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Perfect 10 prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. That the iWeb Defendants and each of the Doe Defendants, and their officers, agents, servants, employees, representatives, successors, and assigns, and all persons in active

concert or participation with them, be enjoined from, directly or indirectly, copying, reproducing, distributing, adapting, or publicly displaying the Perfect 10 Copyrighted Works or from causing, contributing to, enabling, facilitating or participating in the infringement of any of Perfect 10's copyrights, including without limitation, the Copyrighted Images listed on Exhibit A.

2. That Defendants be ordered to destroy all photographs, documents, and other items, electronic or otherwise, in its possession, custody, or control, that infringe the copyrights of Perfect 10.

3. That Defendants be ordered to stop hosting websites that infringe Perfect 10 copyrights.

4. For maximum statutory damages under the Copyright Act in the amount of $150,000 with respect to each copyrighted work infringed, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c), in an amount to be proven at trial.

5. For Perfect 10's costs in this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

6. For prejudgment interest according to law.

7. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Linda J. Zirkelbach (D.C. Bar No. 466189)
Luisa Caro (D.C. Bar No. 460560)
POTOMAC LAW GROUP, PLLC
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
(202) 204-3005
lzirkelbach@thepotomaclawgroup.com
lcaro@thepotomaclawgroup.com

*Attorneys for Plaintiff*

Dated: November 5, 2012